## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERRY CATHERINE**                                    **CIVIL ACTION**

**VERSUS**                                                       **No. 23-3986**

**HUGE ASS BEERS**                                        **SECTION I**

## ORDER AND REASONS

The question before this Court is whether plaintiff Terry Catherine ("plaintiff") timely filed his Title VII complaint within 90 days of receiving his right-to-sue letter—or by August 13, 2023. The Court previously dismissed plaintiff's complaint as untimely,[1] concluding that it was filed on August 22, 2023, as reflected by the original complaint filed in the record.[2] Plaintiff appealed[3] from the same and introduced evidence in support of his allegation that his complaint was timely filed on August 11, 2023. This evidence was not presented to this Court when it issued its order and reasons. In a motion to supplement the record on appeal, plaintiff stated that he had never filed a complaint on August 22.[4] Instead, he argued that the clerk's office had taken a second original copy presented on August 11 and marked it as filed on August 22.[5]

"[I]n the interest of justice and to vindicate any adverse reflection on the district court clerk's office," the U.S. Fifth Circuit Court of Appeals vacated and

---

[1] R. Doc. No. 38.
[2] *See* R. Doc. No. 1.
[3] R. Doc. No. 48.
[4] R. Doc. No. 70, at 2.
[5] *Id.*

remanded this Court's judgment.[6] The Fifth Circuit instructed the Court to "conduct further proceedings to determine whether Catherine tendered his complaint to the district court on August 11, 2023, and if so, whether he should be permitted to proceed with his suit."[7] "If the answer to this question is yes," then the Court is instructed to "consider the merits of the action."[8]

On April 2, 2025, this Court held an evidentiary hearing as directed by the Fifth Circuit.[9] At the hearing, testimony from plaintiff and his counsel John Courtney Wilson ("Mr. Wilson") directly conflicted with testimony from the employees in the clerk's office, making it clear that "someone is either grossly wrong or grossly lying."[10] The Court concludes that this someone is plaintiff and Mr. Wilson. Accordingly, plaintiff's complaint was untimely filed and must be dismissed.

## I.    BACKGROUND

### a.  The Initial Lawsuit and Appeal

This matter arises from alleged workplace discrimination. Plaintiff alleges in his amended complaint that he was terminated and that his termination was racially motivated in violation of Title VII and Louisiana anti-discrimination laws.[11] Plaintiff's amended complaint states that he received a right-to-sue letter from the

---

[6] R. Doc. No. 75, at 3.
[7] *Id.*
[8] *Id.*
[9] R. Doc. No. 93.
[10] *See* Tr. Evid. Hr'g, at 120.
[11] R. Doc. No. 25, ¶¶ 4–11.

EEOC on or about May 15, 2023.[12] His initial complaint in this matter, as reflected in the record, is dated August 22, 2023.[13]

Defendant MDK 706, LLC ("defendant") filed a motion[14] to dismiss, arguing that plaintiff's Title VII claim was time barred because plaintiff failed to initiate this lawsuit within 90 days of receiving his right-to-sue letter. In its motion, defendant stated that the EEOC charge file confirmed that plaintiff received his right to sue letter via email on May 15, 2023.[15] The Court agreed, concluding that plaintiff had until August 13, 2023 to file his Title VII complaint and that plaintiff's complaint filed on August 22, 2023 was therefore time barred.[16] The Court dismissed plaintiff's Title VII claim with prejudice and dismissed his state-law claim without prejudice, declining to exercise supplemental jurisdiction over the remaining state-law claim.[17] Thereafter, the Court entered judgment.[18]

Plaintiff then filed a motion[19] for reconsideration, arguing that his complaint was timely filed and that the clerk's office was responsible for the delay in entering the complaint into the record.[20] Plaintiff insisted that his complaint had actually been filed on August 11, 2023,[21] but he provided the Court with no evidence or specific

---

[12] *Id.* ¶ 2.
[13] R. Doc. No. 1.
[14] R. Doc. No. 29.
[15] R. Doc. No. 29-1, at 3.
[16] R. Doc. No. 38, at 5–6.
[17] *Id.* at 6–7.
[18] R. Doc. No. 39.
[19] R. Doc. No. 41.
[20] R. Doc. No. 41-1, at 2.
[21] *Id.*

references to the record demonstrating that the complaint was timely tendered. The Court concluded that, while there was some evidence that plaintiff had signed and dated the complaint on August 10, 2023—as shown on the civil cover sheet[22]—there was no evidence that the complaint had been tendered to the Clerk's Office until August 22, 2023.[23]

Plaintiff then filed a notice of appeal.[24] Shortly after, plaintiff filed a motion[25] to amend or correct the record and attached a photo of the first page of his complaint with a stamp indicating that the complaint was tendered for filing on August 11, 2023.[26] No photo of the signature page was included. The Court denied the motion to supplement the record, concluding that the Court had never received a copy of that complaint before rendering its judgment and that supplementing the record accordingly was inappropriate pursuant to Federal Rule of Appellate Procedure 10(e).[27] Plaintiff then filed another similar motion[28] to amend or correct the record pursuant to Federal Rule of Appellate Procedure 10(e) and Federal Rule of Civil Procedure 60(a), which the Court denied.[29]

Noting that plaintiff "provided no evidence that the clerk's August 22 date of filing was incorrect" nor any "other information or argument to support his

---

[22] R. Doc. No. 1-1.
[23] R. Doc. No. 47, at 5–6.
[24] R. Doc. No. 48.
[25] R. Doc. No. 50.
[26] R. Doc. No. 50-2.
[27] R. Doc. No. 56, at 4–6.
[28] R. Doc. No. 63.
[29] R. Doc. No. 66.

contention" that his complaint was filed on time before the Court issued its judgment, the Fifth Circuit vacated this Court's judgment and remanded the matter to this Court.[30] The Fifth Circuit instructed that, "in the interest of justice and to vindicate any adverse reflection on the district court clerk's office," the Court should "conduct further proceedings to determine whether Catherine tendered his complaint to the district court on August 11, 2023, and if so, whether he should be permitted to proceed with his suit."[31]

### b. Pre-Hearing Proceedings

The Court thereby reopened[32] this case and scheduled an evidentiary hearing on April 2, 2025 to determine whether plaintiff timely filed his complaint in this matter.[33] The Court ordered the parties to submit memoranda ahead of the hearing.[34]

Before the parties submitted their pre-hearing memoranda, the clerk's office provided the parties with a narrative prepared on August 19, 2024 by Brad Newell ("Mr. Newell"), as supervisor of the *pro se* unit, in anticipation of a potential request for information by the Fifth Circuit.[35] The clerk's office narrative stated that Mr. Wilson came into the *pro se* unit minutes before closing on August 10, 2023, at which time it was too late in the day for the clerk to process the complaint.[36] Additionally,

---

[30] R. Doc. No. 75-1, at 2–3.
[31] *Id.* at 3.
[32] R. Doc. No. 72.
[33] *See* R. Doc. No. 89.
[34] R. Doc. No. 73.
[35] R. Doc. No. 97-6, at 2 (clerk's responses to requests for testimony & records).
[36] R. Doc. No. 97-4, at 1.

the narrative states that Mr. Wilson did not have a motion to proceed *in forma pauperis* and was not prepared to pay the filing fee.[37]

When asked in what capacity Mr. Wilson was filing the complaint, Mr. Wilson stated that he was dropping the complaint off for a friend.[38] Mr. Newell advised that it was too late to process the complaint in person and that plaintiff should be the one to submit his complaint, as he was proceeding *pro se*.[39] However, Mr. Newell explained that plaintiff could file his complaint in person at a later date, by mail, or by email.[40] He advised that if the complaint was emailed before midnight, the filing date would be the date it was sent, despite being sent after hours.[41] Mr. Wilson then allegedly identified himself as an attorney at which point Mr. Newell advised him that attorneys are required to file electronically.[42]

The clerk's narrative reflects that Mr. Wilson returned to the *pro se* unit the next day on August 11 at 1:30 p.m., again attempting to file the complaint on behalf of plaintiff.[43] The narrative states that Mr. Wilson did not initially identify himself as an attorney.[44] The assisting clerk began processing the complaint, assuming that

---

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

Mr. Wilson was plaintiff, including stamping the complaint.[45] The clerk then noticed deficiencies with the filing and brought the issue to Mr. Newell.[46]

Mr. Newell stated that he recognized Mr. Wilson from the previous day and asked Mr. Wilson why plaintiff was not there to file the complaint on his own behalf.[47] Mr. Wilson allegedly told Mr. Newell that plaintiff was busy.[48] The narrative states that Mr. Newell then attempted to call plaintiff, but plaintiff did not answer.[49] Mr. Newell reminded Mr. Wilson that he must file electronically if he was acting as plaintiff's attorney and reminded Mr. Wilson of alternative means that plaintiff could use to file his complaint on his own behalf.[50]

The same day at 2:56 p.m., the clerk's narrative states that a person identifying himself as plaintiff called the *pro se* unit.[51] Mr. Newell informed him that someone was attempting to file a case on his behalf, and plaintiff told Mr. Newell that Mr. Wilson was filing the case for him as his attorney.[52] At 3:20 p.m., Mr. Wilson allegedly returned to the *pro se* unit, again attempting to file the complaint.[53] Based on Mr. Newell's discussion with plaintiff, Mr. Newell informed Mr. Wilson that he would have to file the complaint electronically if he was acting as plaintiff's attorney.[54]

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.* at 1–2.
[53] *Id.* at 2.
[54] *Id.*

On August 21, 2023, the clerk's office narrative states that Mr. Wilson called the *pro se* unit to ask why no one had called him about plaintiff's complaint.[55] The *pro se* clerk advised Mr. Wilson that, because he was not representing plaintiff, no one would be contacting him about the complaint.[56] He was again advised that if he intended to file the complaint as plaintiff's attorney, he would have to do so electronically.[57] Otherwise, the expectation was that plaintiff would file his complaint to the *pro se* unit on his own behalf.[58] That same day, plaintiff called the *pro se* unit to ask about his complaint.[59] When asked, he stated that Mr. Wilson was not really his attorney but was acting "more like an assistant attorney."[60] The clerk's narrative contends that plaintiff did not appear to understand what it means to proceed *pro se*.[61] Mr. Newell thereby explained to plaintiff what it meant to act as a *pro se* party, how to file a *pro se* complaint, and explained that Mr. Wilson should refrain from contacting the *pro se* unit if he was acting as plaintiff's attorney.[62] On August 22, 2023, the clerk's office narrative states that plaintiff came to the *pro se* unit in person and without Mr. Wilson to file his complaint.[63]

In plaintiff's pre-hearing memorandum submitted on March 10, 2025, plaintiff outlined a very different series of events. Plaintiff maintained that Mr. Wilson had

---

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

attempted to file the complaint at the *pro se* desk without plaintiff on August 10, 2023.[64] A young female clerk and her male supervisor told Mr. Wilson that a third party could not file a *pro se* complaint on behalf of a *pro se* plaintiff and declined to accept the complaint.[65] Plaintiff states that he came back the next day on August 11, 2023 with Mr. Wilson and two original complaints.[66] The memorandum contends that the female clerk at the desk refused to accept the complaint but that he could not remember why.[67] Upon refusal, plaintiff states that Mr. Wilson requested that she stamp the complaint as tendered, which she did.[68] Then, plaintiff immediately photographed the complaint at the *pro se* window.[69] According to the memorandum, the *pro se* clerk "nearly simultaneously" asked for another copy of the complaint, and plaintiff gave her the other original complaint.[70] Plaintiff states that this second copy appears to be the complaint that was filed on August 22, 2023,[71] thereby suggesting that the clerk had held onto the second copy of his complaint for 11 days before filing it into the record.

Two days later, on March 12, 2025, plaintiff filed an amended memorandum based on a review of his photograph of the August 11 complaint and a visit to the courthouse that plaintiff made on March 11, 2025.[72] In this memorandum, plaintiff

---

[64] R. Doc. No. 84, at 2.
[65] *Id.*
[66] *Id.*
[67] *Id.* at 2–3.
[68] *Id.* at 3.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] R. Doc. No 88, at 1.

withdrew his statement about photographing his stamped August 11 complaint at the *pro se* window. Instead, plaintiff stated that the *pro se* clerk had told him that there was a policy against taking photographs in the clerk's office and that she had also refused to make a copy of the complaint for him.[73] Plaintiff then states that he requested to take the complaint elsewhere to make a copy, which the *pro se* clerk agreed to allow him to do.[74] Once outside, plaintiff states that he took a photo of the complaint and that the bricks at the courthouse can be seen in the background.[75] Plaintiff and Mr. Wilson then allegedly went back to the *pro se* desk, returned the stamped complaint to the clerk, and gave the clerk a second original copy of the complaint that she requested.[76]

Defendant filed a memorandum arguing that the evidence would show that the complaint was not filed until August 22, 2023.[77] Plaintiff then filed a reply.[78] In this reply, plaintiff without explanation withdrew his suggestion that the August 22 complaint filed in the record was the second copy of the complaint that he allegedly gave to the *pro se* clerk on August 11.[79]

---

[73] *Id.* at 3.
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] R. Doc. No. 90.
[78] R. Doc. No. 91.
[79] *Id.* at 2.

### c.  The Evidentiary Hearing

The Court held the evidentiary hearing on April 2, 2025.[80] The witnesses presented the following testimony and evidence.

### i.    *Plaintiff's Testimony*

Plaintiff took the stand first, testifying that he met with Mr. Wilson outside the courthouse on August 11 and that they proceeded to the *pro se* unit to file paperwork for this case.[81] Plaintiff testified that he signed the complaint and all paperwork on August 11 when he was with Mr. Wilson, and he stated that he did not sign any paperwork before then.[82] Plaintiff maintained that the cover sheet dated August 10, 2023 was signed on August 11, that the date was not in his handwriting, and that the date was not on the paper when he signed it.[83] Plaintiff presented his personal appointment book, which contained an entry stating "EEOC lawsuit paperwork is filed August 11, 2023 . . . (Done!)."[84] Plaintiff stated that this entry was a reminder to meet Mr. Wilson at the courthouse.[85]

After meeting Mr. Wilson outside the courthouse, plaintiff testified that they proceeded to the *pro se* desk and informed the clerk that they were there to file a lawsuit.[86] Plaintiff could not remember the name of the clerk but testified that she was a "Caucasian lady" between the ages of 20 and 50 with glasses and light brown

---

[80] R. Doc. No. 93.
[81] Tr. Evid. Hr'g, at 11.
[82] *Id.* at 22–23, 40.
[83] *Id.* at 173–74.
[84] R. Doc. No. 97-2.
[85] Tr. Evid. Hr'g, at 12.
[86] *Id.* at 13.

hair.[87] Plaintiff stated that he was successful in getting the complaint stamped by the *pro se* clerk but that the clerk would not make a copy for him and would not let him take a photo of the complaint inside the court building.[88] Plaintiff and Mr. Wilson therefore went outside and took a photo of the stamped complaint outside the courthouse.[89]

After taking a photo of the complaint, plaintiff testified that he and Mr. Wilson walked back into the *pro se* unit to give the papers to the clerk, at which point they were standing together in the clerk's office.[90] The clerk asked for more paperwork, which Mr. Wilson gave to her.[91] Plaintiff testified that Mr. Wilson asked the clerk if that was everything, and the clerk said "fine."[92] He and Mr. Wilson then left together.[93] Plaintiff denied ever having come into the courthouse to file his complaint on August 22, 2023.[94]

Plaintiff testified that he remembered receiving a call from the clerk's office around the time of filing his complaint regarding Mr. Wilson.[95] He testified that he told the clerk that Mr. Wilson was his attorney.[96] However, plaintiff could not remember exactly when he received this call.[97]

---

[87] *Id.* at 25.
[88] *Id.* at 14.
[89] *Id.* at 15.
[90] *Id.* at 17, 25–26.
[91] *Id.* at 18–19.
[92] *Id.*
[93] *Id.*
[94] *Id.* at 41.
[95] *Id.* at 31.
[96] *Id.*
[97] *Id.*

During plaintiff's testimony, Mr. Wilson showed plaintiff a photo of the stamped August 11 complaint, which was introduced into evidence.[98] For the first time, plaintiff's counsel included a photo of the alleged signature page of the August 11 complaint.[99] However, plaintiff testified that no metadata was available for these photos because the phone on which they were taken is now broken.[100] He also testified that he does not have a backup of any of this data on the cloud.[101]

ii.     *Mr. Wilson's Testimony*

Mr. Wilson testified that the first time he attempted to file plaintiff's complaint was on August 10 and that he had arrived late and without plaintiff.[102] He stated that this was the only issue with the filing and testified that plaintiff must have been mistaken and signed the complaint and the civil cover sheet on August 10, as Mr. Wilson denied that the cover sheet was backdated.[103] Mr. Wilson testified that no one at the clerk's office advised him that attorneys could not file complaints on behalf of *pro se* litigants at that time.[104]

The next day, on August 11, Mr. Wilson testified that he returned to the *pro se* unit alone around midday.[105] At that time, Mr. Wilson stated that Mr. Newell "vigorously" explained to him that the clerk's office would not allow an attorney to

---

[98] R. Doc. No. 97-11, at 1.
[99] *See id.* at 2.
[100] Tr. Evid. Hr'g, at 34.
[101] *Id.*
[102] *Id.* at 130–31.
[103] *Id.*
[104] *Id.* at 131.
[105] *Id.* at 132.

file a complaint on behalf of a *pro se* litigant unless the plaintiff was also present.[106] Mr. Wilson said that he left after that conversation and that nothing had been stamped at that point.[107] Afterwards, he stated that he likely called plaintiff and told him to come down to the courthouse because he could not file the complaint without him.[108]

When plaintiff arrived, Mr. Wilson testified that they went together to the *pro se* unit and spoke to a white female clerk with light brown hair.[109] He stated that he gave the clerk two signed originals of the complaint.[110] Mr. Wilson testified that the clerk, without explanation, declined to accept the complaint.[111] He then asked her to stamp it "tendered" anyway.[112] The clerk allegedly stamped one complaint and did not stamp the other, and Mr. Wilson figured that that they would be "good to go."[113] He stated that, "because of the vigor with which Mr. Newell had addressed [him] earlier," he had a gut feeling that he should take a photo of the complaint.[114] Mr. Wilson testified that the female clerk told him that he could not take a photo of the complaint in the *pro se* office and declined to make him a copy.[115] Consequently, Mr.

---

[106] *Id.* at 132–33.
[107] *Id.* at 134.
[108] *Id.*
[109] *Id.*
[110] *Id.* at 136–37.
[111] *Id.* at 134–35.
[112] *Id.* at 135.
[113] *Id.* at 135–37.
[114] *Id.* at 135.
[115] *Id.*

Wilson stated that he and plaintiff took the complaint outside and that plaintiff took a photo of the complaint with his phone.[116]

Thereafter, Mr. Wilson stated that he and plaintiff took the complaint back inside.[117] He testified that he left the stamped complaint with the clerk's office and that no one told him whether the pleading was being accepted or rejected.[118] But he stated that no one told him that the pleadings were lacking in any way.[119] Nonetheless, he testified that he did not pay a filing fee and that he could not recall whether plaintiff submitted an application to proceed *in forma pauperis*.[120]

Mr. Wilson testified that on or about August 20, he called the clerk's office to check on the complaint and became aware that the complaint was not in the record, though he could not recall why he thought there might be an issue with the complaint.[121] He said that his understanding was that plaintiff had cured any issues by filing a complaint on August 22.[122] When asked why Mr. Wilson did not raise the issue about the correct filing date with the Court until after a motion to dismiss was filed, he testified that he believed that the complaint in the record would have a stamp on the back showing that it had been tendered on August 11.[123]

---

[116] *Id.*
[117] *Id.* at 136.
[118] *Id.* at 140.
[119] *Id.* at 140–41.
[120] *Id.* at 140.
[121] *Id.* at 141–43.
[122] *Id.* at 142–43.
[123] *Id.* at 144.

During Mr. Wilson's testimony, he was asked about his attorney-client relationship with plaintiff. Mr. Wilson stated that he had been trying to retire and that he did not want to be plaintiff's attorney.[124] However, he stated that plaintiff was unable to find another attorney and that he felt an obligation toward plaintiff as a former client.[125] Mr. Wilson therefore testified that he told plaintiff that he would not be his official attorney and would not sign any pleadings.[126] Mr. Wilson could not remember when he began speaking to plaintiff about this matter, but he stated that it was at least 90 days before filing the complaint and probably sometime before that.[127] Mr. Wilson could not remember whether he was on record with the EEOC as plaintiff's attorney, but he confirmed that he drafted the complaint.[128]

### iii.    The Clerk's Office Testimony

Four witnesses from the clerk's office testified at the evidentiary hearing: Clerk of Court Carol Michel ("Ms. Michel"), supervisor of the *pro se* unit Mr. Newell, former *pro se* clerk Sandra Simlin (Ms. Simlin), and former *pro se* clerk Arianna Johnson ("Ms. Johnson").[129] Ms. Simlin and Ms. Johnson are Black women with glasses and do not match the description given by plaintiff or Mr. Wilson about the white woman with light brown hair between the ages of 20 and 50 who allegedly helped them on August 11, 2023.

---

[124] *Id.* at 128.
[125] *Id.* at 128–29, 151.
[126] *Id.* at 128–29.
[127] *Id.* at 129.
[128] *Id.* at 129–30.
[129] *See* R. Doc. No. 93.

The Court confirmed that Mr. Newell, Ms. Simlin, and Ms. Johnson were the only individuals who worked in the *pro se* unit on the dates in question.[130] Indeed, Mr. Newell testified that it was not possible that a woman matching that description was working at the *pro se* unit on August 11, 2023.[131] Ms. Simlin and Ms. Johnson likewise testified that no one other than Ms. Simlin, Mr. Newell, or Ms. Johnson ever worked at the *pro se* desk on the dates in question.[132] Ms. Michel confirmed that, according to human resources records, Ms. Johnson was on sick leave all day on August 10, 2023 and after 2:30 p.m. on August 11, 2023.[133] When a clerk is absent, Ms. Michel also testified that they ordinarily do not have substitute employees.[134]

Mr. Newell and Ms. Simlin testified consistently with the clerk's office narrative submitted to the parties prior to the hearing. Mr. Newell said that when Mr. Wilson first came to the *pro se* unit on August 10, 2023, he found the interaction odd because Mr. Wilson came at 5 p.m., did not provide any information, and presented a complaint that was unsigned and without an *in forma pauperis* application or a filing fee.[135] According to his testimony, Mr. Newell attempted to help Mr. Wilson remedy those deficiencies, but only then did Mr. Wilson state that he could not because he was not the plaintiff.[136]

---

[130] Tr. Evid. Hr'g, at 116–17.
[131] *Id.* at 76–77, 84.
[132] *Id.* at 107, 123.
[133] *Id.* at 155.
[134] *Id.* at 156–57.
[135] *Id.* at 86.
[136] *Id.*

Ms. Simlin likewise testified that Mr. Wilson came to the *pro se* desk to file the complaint on August 10, 2023 but that he arrived seven or eight minutes before closing without enough time to process the complaint.[137] Ms. Simlin testified that Mr. Wilson was asked to come back the next day and that she did not examine any of Mr. Wilson's documents on that date.[138]

Regarding Mr. Wilson's visit on August 11, Ms. Simlin testified that Mr. Wilson was alone and again attempted to file a complaint.[139] She stated that she took Mr. Wilson's documents and discovered that something was wrong with them.[140] Ms. Simlin testified that something was not signed and that he did not have an application to proceed *in forma pauperis*.[141] Mr. Wilson gave her two copies of the complaint, one of which she gave to Mr. Newell.[142] Ms. Simlin testified that she whited out the stamped one because Mr. Wilson did not have all of the documents and that she gave the deficient documents back to Mr. Wilson.[143]

Mr. Newell testified that he was in his office when Ms. Simlin brought it to his attention that Mr. Wilson was attempting to file a complaint and that the complaint was deficient.[144] Mr. Newell testified that, to the best of his recollection, Ms. Simlin told him that the complaint was still not signed, there was no *in forma pauperis*

---

[137] *Id.* at 100.
[138] *Id.*
[139] *Id.* at 109.
[140] *Id.* at 100.
[141] *Id.* at 109.
[142] *Id.* at 107.
[143] *Id.* at 100, 107–08.
[144] *Id.* at 78, 83.

application, and there was no filing fee.[145] Mr. Newell testified that he examined the complaint to confirm this.[146]

After this interaction, Mr. Newell testified that he had a telephone conversation with plaintiff on August 11 to ask him about whether he was filing a *pro se* complaint and to inform him how he could cure the deficiencies with the filings.[147] Mr. Newell stated that plaintiff was unaware that he was proceeding *pro se* or what a *pro se* plaintiff was.[148] Plaintiff allegedly informed Mr. Newell that Mr. Wilson was his attorney and that Mr. Wilson would be filing the complaint.[149] After Mr. Wilson came back for the second time on August 11, Mr. Newell testified that he told Mr. Wilson about what plaintiff said about Mr. Wilson being his attorney.[150] Mr. Wilson told Mr. Newell that plaintiff was confused.[151] At that point, Mr. Newell testified that he informed Mr. Wilson about the deficiencies with the complaint, including that it was unsigned, and let him know that plaintiff could file the completed documents in person, through the mail, or through email.[152]

On both occasions when Mr. Wilson visited the *pro se* unit on August 11, Mr. Newell's testimony was clear that plaintiff was not present with Mr. Wilson and that the complaint was deficient.[153] However, he testified that plaintiff came alone and

---

[145] *Id.* at 83.
[146] *Id.* at 87.
[147] *Id.* at 102.
[148] *Id.* at 103.
[149] *Id.*
[150] *Id.* at 104.
[151] *Id.*
[152] *Id.*
[153] *Id.* at 84, 95–96.

filed a complete complaint with an *in forma pauperis* application on August 22, 2023.[154]

When asked why the August 11 complaint was stamped as tendered for filing, Mr. Newell stated that it must have been stamped erroneously and that it was returned to Mr. Wilson as deficient.[155] Ms. Simlin testified that the procedure is to white out the date on the stamp if someone in the *pro se* unit stamps a complaint that the plaintiff is not going to file that day.[156] When asked why the photo of the August 11 complaint was not whited out, she stated that it was possible that she had only whited out one of the copies that was given to her because she gave the other copy to Mr. Newell to reference when he spoke to Mr. Wilson at the window.[157]

Regarding plaintiff's photograph of the August 11 complaint, Mr. Simlin denied ever advising Mr. Wilson or anyone else that they could not photograph the complaint in the clerk's office.[158] Additionally, if the complaint was accepted by the clerk with everything in order, Mr. Newell testified that Mr. Wilson would not have been allowed to leave with the complaint to photograph it.[159]

Ms. Simlin contested plaintiff's allegations further and denied taking one of the copies given to her on August 11 and filing it into the record on August 22.[160] She stated that the *pro se* unit requires all documents to be docketed into the record no

---

[154] *Id.* at 105.
[155] *Id.* at 94–95.
[156] *Id.* at 108.
[157] *Id.* at 108–09.
[158] *Id.* at 110.
[159] *Id.* at 96–97.
[160] *Id.* at 113.

later than 48 hours after being accepted for filing.[161] After 48 hours, she would be required to notify her supervisor why she had not processed that document.[162] Ms. Simlin stated that the *pro se* unit is not allowed to hold documents, which is why deficient documents are returned.[163]

In addition to the factual circumstances of plaintiff's filing, the Court and the parties inquired into applicable clerk's office policies. As the Clerk of Court, Ms. Michel testified that the clerk's office rules are that *pro se* litigants can file documents at the *pro se* counter, through the mail, or through e-mail electronic filing.[164] The clerk's office has since added an electronic data submission system for filing *pro se* documents, but she stated that this did not exist when plaintiff filed his complaint.[165] Attorneys, on the other hand, must file their pleadings through CM/ECF, the Court's electronic filing system.[166]

Pursuant to policies of the clerk's office, Ms. Michel stated that clerks are permitted to refuse to file a complaint that is marked "tendered" and given to the clerk if, for example, the complaint is not signed because the clerk's office cannot know that it is actually the complaint of the filer unless it is signed.[167] She also stated that complaints that are filed in person without a filing fee or application to proceed

---

[161] *Id.* at 113–14.
[162] *Id.* at 114.
[163] *Id.*
[164] *Id.* at 69.
[165] *Id.*
[166] *Id.*
[167] *Id.* at 57.

*in forma pauperis* are not accepted.[168] However, Ms. Michel testified that if a *pro se* complaint is signed and presented for filing by the *pro se* plaintiff along with either a filing fee or a signed *in forma pauperis* application, then the complaint should be filed.[169]

Ms. Michel stated that, if the complaint was not signed, it probably should not have been stamped.[170] But she could not say that the clerk would not stamp a complaint before verifying that it was signed.[171] However, if a complaint is stamped and accepted for filing, Ms. Michel stated that the clerk's office would not allow a litigant to leave with the complaint.[172]

Ms. Michel further testified that there would be no reason that a clerk would hold onto a complaint for 11 days before filing it into the record or put the wrong date on the complaint.[173] She explained that, if this were to ever happen, she would have to terminate the individual and notify the judge about what had occurred.[174] When presented with the clerk's record log for the *pro se* unit, Ms. Michel testified that if a complaint was filed properly and accepted by the clerk's office, it would appear in that log. [175] However, plaintiff's complaint does not appear in the log for either August 10 or 11, 2023.[176]

---

[168] *Id.* at 164.
[169] *Id.* at 59–60.
[170] *Id.* at 60.
[171] *Id.*
[172] *Id.* at 70.
[173] *Id.* at 66.
[174] *Id.* at 67.
[175] *Id.* at 69.
[176] R. Doc. No. 97-9 (*pro se* log entries for E.D. La. Case No. 23-3986).

## II.    LAW AND ANALYSIS

Pursuant to Federal Rule of Civil Procedure 5(d)(2), "[a] paper not filed electronically is filed by delivering it . . . to the clerk." The Fifth Circuit has held that a complaint is filed when the complaint is received rather than when the complaint is actually filed into the record. *See Hernandez v. Aldridge*, 902 F.2d 386, 388 (5th Cir. 1990). The Court first makes factual findings regarding the circumstances of plaintiff's attempt to file his complaint, as ordered by the Fifth Circuit. The Court then applies these facts to the law to determine whether those facts establish that plaintiff's complaint was filed on August 11, 2023 within the meaning of Rule 5.

### a.  The Court's Factual Findings

The Court begins this section by acknowledging the unusual posture of this case. "The ninety-day filing requirement is not a jurisdictional prerequisite, but more akin to a statute of limitations." *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010). When there are factual disputes concerning whether a complaint is timely filed, those factual disputes are ordinarily submitted to a jury. *See, e.g., Margolies v. Deason*, 464 F.3d 547, 555 (5th Cir. 2006) (stating that the question of whether claims were time barred was "a question for the jury" because there were factual disputes regarding when the plaintiff knew or should have known about the wrongful act and resulting injury). The Court will ordinarily not dismiss a matter as time barred on a 12(b)(6) motion unless "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

When the Court initially dismissed this matter, it was evident from the pleadings that the matter was time barred. There were no facts alleged in plaintiff's complaint indicating that the complaint was timely filed or that there was a basis for tolling. Nor was there evidence supporting such a position. Furthermore, the Court was not required to accept plaintiff's bare legal conclusion in his response to defendant's motion to dismiss that he timely filed his complaint.[177] *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The Fifth Circuit, however, has ordered this Court "to determine whether [plaintiff] tendered his complaint to the district court on August 11, 2023, and if so, whether he should be permitted to proceed with his suit."[178] Only if the answer to this question is yes should the Court consider the merits.[179] By treating the timeliness of the complaint as a prerequisite to considering the merits, the Fifth Circuit asks this Court to make a factual finding that it ordinarily would not be permitted to make.

Proceeding accordingly, the Court concludes by a preponderance of the evidence that the complaint that Mr. Wilson attempted to file on August 11, 2023 was rejected by the clerk's office because it was unsigned, plaintiff was not present, and the complaint was submitted by a party who was neither the *pro se* plaintiff nor plaintiff's lawyer. Plaintiff's complaint was not accepted by the clerk's office until

---

[177] *See* R. Doc. No. 33, at 1.
[178] R. Doc. No. 75-1, at 3.
[179] *Id.*

August 22, 2023 when he personally presented a signed complaint with an application to proceed *in forma pauperis*.

Because plaintiff and the clerk's office present inconsistent narratives of the relevant events, the Court must make a credibility determination. Considering the totality of the record, the Court determines that the witnesses from the clerk's office testified credibly. Plaintiff and his attorney, however, have consistently displayed a lack of candor with this Court that undermines plaintiff's arguments. Furthermore, plaintiff and his counsel have consistently changed their factual allegations throughout the proceedings, casting significant doubt as to their credibility. Lastly, plaintiff's version of events strikes the Court as particularly implausible and internally inconsistent.

Plaintiff was less than forthright with the Court during the evidentiary hearing. When asked whether he had ever filed any other lawsuit before the Court, plaintiff testified that he had not.[180] The Court then referenced a 2019 case as well as another 2016 case,[181] both of which were filed by a Terry Catherine in this Court.[182] Plaintiff confirmed that these cases were his.[183] While plaintiff contended that he had misunderstood and did not understand the Court to be asking about cases before

---

[180] Tr. Evid. Hr'g, at 45–47.
[181] *See Catherine v. Razzoo's Bar and Patio*, E.D. La. Case No. 19-13221; *Catherine v. Walk-Ons Bistreaux and Bar*, E.D. La. Case No. 16-11165.
[182] Tr. Evid. Hr'g, at 47. The Court now notes that plaintiff appears to have had another 2017 case before another section of this Court. *See Catherine v. SureTemps, LLC*, E.D. La. Case No. 17-7561.
[183] Tr. Evid. Hr'g, at 47.

other judges, the Court also noted to plaintiff that his 2016 case had been before the undersigned judge.[184]

Furthermore, when plaintiff was asked whether Mr. Wilson had ever represented plaintiff in other lawsuits before the Court, plaintiff testified that he had not.[185] Yet, as the Court pointed out, Mr. Wilson was listed on the docket sheet as representing plaintiff in his 2019 case before another section of this Court.[186] That case was dismissed for failure to state a claim.[187] Plaintiff maintained that he had decided not to go forward with his 2019 lawsuit and had not hired an attorney for the case in which Mr. Wilson was listed as his attorney.[188] Yet, not only had the case not been voluntarily dismissed, but plaintiff filed a motion[189] for reconsideration of the Court's motion to dismiss, which the Court denied.[190]

Mr. Wilson likewise has displayed a consistent lack of candor with this Court. Mr. Wilson attempted to act as plaintiff's attorney while insisting to the Court that he was nothing more than a personal friend. Mr. Wilson confirmed to the Court that he was the one who drafted the complaint.[191] Indeed, Mr. Wilson had acted as plaintiff's counsel on other occasions before this Court, a fact which supports the existence of an attorney-client relationship here. Yet Mr. Wilson declined to correct

---

[184] *Id.* at 47, 51.
[185] *Id.* at 45.
[186] *Id.* at 48–49. *See Catherine v. Razzoo's Bar and Patio*, E.D. La. Case No. 19-13221.
[187] E.D. La. Case No. 19-13221, R. Doc. No. 9.
[188] Tr. Evid. Hr'g, at 47–48.
[189] E.D. La. Case No. 19-13221, R. Doc. No. 10.
[190] E.D. La. Case No. 19-13221, R. Doc. No. 20.
[191] Tr. Evid. Hr'g, at 29.

the record when plaintiff testified that he had not had other cases before this Court and that Mr. Wilson had not previously represented him in litigation.

Mr. Wilson's credibility is likewise undermined by evidence tending to show that he has displayed a lack of candor with his client. Plaintiff appeared to believe at all relevant times that he was represented by an attorney in this litigation. Plaintiff testified that Mr. Wilson was acting as his attorney on August 11, 2023 when they allegedly went to the courthouse.[192] And he believed that "at that moment" Mr. Wilson was going to sign the paperwork to represent plaintiff in connection with his case.[193] Plaintiff testified that he believed Mr. Wilson to be fully responsible for his case.[194] Indeed, he testified that, at the time he was filing his complaint, he had not even read the contents of the complaint and that he signed the complaint and all paperwork on August 11 before filing.[195] Plaintiff's appointment book further demonstrates that plaintiff believed that he had formed an attorney-client relationship at least as early as April 2023.[196] Perplexingly, plaintiff testified that Mr. Wilson had told him that he "was helping [plaintiff] as [his] attorney but not as [his] official attorney."[197]

In addition to a lack of candor, plaintiff's credibility has been undermined by the fact that his version of events has changed numerous times throughout the

---

[192] *Id.* at 20–21.
[193] *Id.* at 20.
[194] *Id.* at 24.
[195] *Id.* at 22–23.
[196] R. Doc. No. 97-2.
[197] Tr. Evid. Hr'g, at 46.

proceedings. Most notably, in his brief before the Fifth Circuit and in his pre-hearing memorandum before this Court, plaintiff maintained that neither he nor his counsel filed a complaint on August 22, insisting that this complaint must have been the second original complaint given to the clerk on August 11.[198] Plaintiff withdrew that assertion in his pre-hearing reply brief,[199] which Mr. Wilson confirmed upon questioning at the hearing.[200] He stated that he believed it to be true at the time but that he later found it to be incorrect.[201] However, after being questioned about his allegation and subsequent withdrawal of that allegation, Mr. Wilson informed the Court that he wanted to "withdraw [his] withdrawal."[202]

This theory changed yet again when plaintiff submitted his first motion[203] to reopen the evidentiary hearing. In that motion, plaintiff attached a report from a document expert,[204] which presumably concluded that the photograph of plaintiff's alleged August 11 signature page was identical to the signature page on the August 22 complaint filed in the record. Plaintiff thereby argued that the clerk must have taken the signature page from his stamped complaint submitted on August 11 and combined it with the first page of the second original that he gave to the clerk.[205]

---

[198] R. Doc. No. 70, at 2 (motion to supplement the record before the Fifth Circuit); R. Doc. No. 84, at 3 (plaintiff's pre-hearing memorandum).

[199] R. Doc. No. 91, at 2.

[200] Tr. Evid. Hr'g, at 159–60.

[201] *Id.* at 160.

[202] *Id.* at 166.

[203] R. Doc. No. 99.

[204] *See* R. Doc. No. 102 (manual attachment).

[205] R. Doc. No. 99.

Lastly, and in addition to the fluid nature of plaintiff's theory, plaintiff's narrative of events is inconsistent and relies on improbable facts and assumptions. Plaintiff's narrative fails to explain why the clerk's office would stamp a complaint that it had already refused to accept, why the clerk's office allegedly accepted the complaint after he photographed the complaint, or why it would allow him to leave with a complaint that was stamped and accepted for filing in order to take a photo. The Court finds it particularly improbable that the clerk's office would hold onto a complaint for 11 days before filing it into the record and deliberately mark the complaint with the wrong filing date.

Even more far-fetched is plaintiff's theory that the clerk mixed the pages from the two original complaints that he submitted on August 11 to create the August 22 complaint. While the Court declined to consider plaintiff's expert report because it was not submitted until after the evidentiary hearing, the Court does not believe that this expert report supports plaintiff's position. Indeed, the Court finds it more probable that plaintiff would photograph the August 22 complaint's signature page to make it appear that the August 11 complaint was signed in a last-ditch effort to save his lawsuit. This is particularly so because Mr. Wilson testified that he submitted two signed originals to the clerk.[206] If true, the clerk would have no incentive to mix the pages of the various copies.[207]

---

[206] Tr. Evid. Hr'g, at 137.

[207] In his second motion to reopen the evidentiary hearing, plaintiff submitted alleged metadata for the photos of the August 11 complaint purporting to show that the photos were taken on August 11, 2023. R. Doc. No. 116-2. Plaintiff had previously testified that there was no metadata for these photos. Tr. Evid. Hr'g, at 34. The Court

Mr. Wilson at one point not only suggested that the clerk's office had misplaced plaintiff's complaint, but he also suggested that the EEOC had misplaced certain documents filed with them.[208] And despite no evidence that anyone other than Ms. Simlin or Mr. Newell assisted Mr. Wilson or plaintiff, Mr. Wilson has insisted that neither he nor his client had ever seen Ms. Simlin before.[209] Instead, he has continued a baseless fishing expedition attempting to find the "expected white clerk" between the ages of 20 and 50. [210]

The Court therefore concludes that the employees of the clerk's office presented more credible testimony. The Court finds by a preponderance of the evidence that Mr. Wilson, without plaintiff present, presented an unsigned, *pro se* complaint on behalf of plaintiff. The clerk's office mistakenly stamped the August 11 complaint as tendered for filing before returning it to Mr. Wilson as deficient. Plaintiff personally presented his signed complaint on August 22, 2023 along with an application to proceed *in forma pauperis.*

---

likewise declined to consider that evidence as untimely and minimally probative. R. Doc. No. 119. The Court notes that iPhones allow users to manually adjust a photo's timestamp and other metadata, as demonstrated by the "adjust" button that is present in the photos of the metadata. *See* iPhone User Guide, *See Photo and Video Information on iPhone*, Apple, https://support.apple.com/guide/iphone/see-photo-and-video-information-iph0edb9c18f/ios (last visited May 3, 2025); *cf.* R. Doc. No. 116-2 (photos of metadata attached to plaintiff's second motion to reopen the evidentiary hearing).

[208] Tr. Evid. Hr'g, at 149.

[209] *Id.* at 74.

[210] *See* R. Doc. No. 99-1, at 4–5 (plaintiff's first motion to reopen the evidentiary hearing, requesting T&A and payroll records along with photographs of every woman present in the *pro se* unit in order to find "the expected white clerk").

### b.  Rule 5 Filing Requirements

The Court next considers whether the clerk's office was permitted to reject plaintiff's complaint, which was presented to it on August 11, 2023.

Federal Rule of Civil Procedure 5(d)(3)(A) provides that "[a] person represented by an attorney must file electronically, unless nonelectronic filing is allowed by the court for good cause or is allowed or required by local rule." Unrepresented persons, however, are not required to file electronically unless there is a court order or local rule with reasonable exceptions. Fed. R. Civ. P. 5(d)(3)(B)(ii). Rule 11(a) also provides that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Notwithstanding these requirements, Rule 5(d)(4) provides that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."

Describing the interaction between the Rule 11 signature requirement and the Rule 5 prohibition against refusing to file papers based on errors of form, the Fifth Circuit in *Gonzales v. Wyatt* addressed a situation in which a non-attorney prisoner filed an unsigned complaint on behalf of another prisoner. 157 F.3d 1016, 1018 (5th Cir. 1998). There, the original unsigned complaint was sent by mail and received on January 19. *Id.* The plaintiff did not file a signed complaint until March, after the expiration of the period of limitations. *Id.* at 1018–19.

"The purpose of requiring [in Rule 11a] unrepresented parties to sign their pleadings . . . . was to make certain that those named as parties in an action in which

there was no lawyer actually had assented to the filing of the action on their behalf." *Id.* at 1021 (quoting 5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1334 at 54–55). Additionally, the court noted that "where the document is tendered and signed by a nonlawyer on behalf of another, then there comes into play the underlying principle itself, namely that in federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer." *Id.*; *see also* 28 U.S.C. § 1645 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . .").

In concluding that the complaint was not filed until March, the Fifth Circuit noted that, had the plaintiff personally sent or delivered an unsigned complaint, there would be an argument that the complaint should be considered filed for limitations purposes on January 19. *Id.* at 1020. But because the clerk received an unsigned complaint that was not personally mailed or delivered, the clerk did not receive a complaint *by* the plaintiff until March. *Id.* at 1022.

The same principles apply here. Plaintiff's complaint was unsigned. Because Mr. Wilson insisted that he was acting not as a lawyer but as a friend of plaintiff, the clerk's office was not required to accept the complaint for filing where it could not conclude that the complaint was submitted by the stated *pro se* plaintiff. The clerk's office did not receive a complaint filed by the plaintiff until August 22, 2023 when plaintiff appeared personally with a signed complaint. Accordingly, plaintiff did not file his complaint within the meaning of Rule 5 until August 22, 2023.

### III.    CONCLUSION

Having found that plaintiff did not file his complaint until August 22, 2023, the Court concludes that plaintiff's Title VII claim is time barred and must be dismissed as outlined in the Court's previous order and reasons dismissing plaintiff's claims on this basis.[211] The Court likewise declines to exercise supplemental jurisdiction over plaintiff's state-law claim for the reasons outlined in its previous order and reasons dismissing this case.[212] Accordingly,

**IT IS ORDERED** that plaintiff's federal Title VII claim is **DISMISSED WITH PREJUDICE**. Plaintiff's state-law claim is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, May 5, 2025.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[211] *See* R. Doc. No. 38.
[212] *See id.*

33